UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| In Re RICHARD D. CRAWFORD,<br><br>Debtor,<br><br>PREMIER CAPITAL, LLC<br><br>Plaintiff/Appellee,<br><br>v.<br><br>RICHARD D. CRAWFORD<br><br>Defendant/Appellant. | Civil No. 15-12726-LTS |

MEMORANDUM AND ORDER ON BANKRUPTCY APPEAL

February 26, 2016

SOROKIN, J.

I.   INTRODUCTION

Chapter 7 debtor Richard D. Crawford ("Crawford") appeals from a final order of the United States Bankruptcy Court for the District of Massachusetts. Having determined that Crawford impliedly consented to trial of certain issues, the bankruptcy court denied Crawford a discharge on two grounds: (1) for concealment of his "de facto" interest in three antique automobiles titled in his wife's name pursuant to 11 U.S. C. § 727(a)(2)(A); and (2) for failing to disclose a Cash Balance Plan ("CBP"), pursuant to 11 U.S. C. § 727(a)(4)(A). After review of

the record on appeal and supporting briefs filed, the judgment of the bankruptcy court denying Crawford's discharge is AFFIRMED.[1]

## II. BACKGROUND

Crawford's voluntary petition for bankruptcy was filed on August 11, 2009. Doc. 15-1 at A28.[2] On September 8, 2009, Crawford filed his original bankruptcy schedules, including his Schedule B. Doc. 15-6. On September 22, 2009, Crawford filed Amended Schedules. Doc. 15-8. On November 16, 2009, Premier Capital LLC ("Premier"), filed an adversary proceeding seeking to deny Crawford a discharge under 11 U.S.C. § 727. Doc. 15-1 at A27-36. The bankruptcy court found it "impossible from the complaint to determine which of the alleged facts" constituted the basis for Premier's "a2" (intent to conceal) claim, Doc.15-1 at A283, and that "[m]ost of the alleged false oaths as to which Premier," sought "judgment were not mentioned in Premier's complaint." Id. at A288.

Premier's pleading defects required the bankruptcy court to determine, seriatim, whether Crawford impliedly consented to trial of eight assets which were purportedly the subject of Premier's a4 (false oath) claim. Doc. 15-1 at A288-93. Out of the eight assets, the bankruptcy court determined that Crawford impliedly consented to trial of two, with only the CBP having formed the basis of the a4 denial. Id. at A290. Crawford challenges the determination of trial by

---

[1] The Court sees no need for oral argument in this matter. In accordance with Bankruptcy Rule 8019, I find the facts and legal arguments have been adequately presented and the decisional process would not be significantly aided by oral argument.

[2] Record cites are to the district court's electronic filing system ("ECF") as "Doc. __." Record Appendix pages are cited as "A__," and appear in the lower right hand corner.

implied consent, as well as the underlying substantive findings. Doc. 14. The Court addresses the only issues raised as they relate to the CBP.[3]

### A. CBP

Crawford's Statement of Financial Affairs and supporting Schedule B, item 12, required Crawford to disclose his "[i]nterests in IRA, ERISA, Keough or other pension or profit sharing plans. Give particulars." Doc. 15-9 at A912. Crawford responded by stating: "401(k) with Wells Fargo." Doc. 15-6 at A879. However, Wells Fargo also held Crawford's CBP as part of his "Total Retirement Accounts." Doc. 15-4 at A849. The statements issued by Wells Fargo listed separately his 401k and CBP. Nowhere on Schedule B did Crawford separately identify his CBP. On his September 8, 2009, Schedule B, Crawford listed $148,000 as the amount held in his "401k." He testified this number was taken from his quarterly statement ending June 30, 2009 (some two months before he filed his Schedules). Doc. 15-2 at A824-25. The $148,000 represented the combined amount of his 401k and CBP from that Wells Fargo statement. Id. at A649.[4] Yet the Wells Fargo quarterly statements listed both separately and cumulatively the amount held in the 401k and CBP. Id. at A824-25 (quarterly statement covering July 1, 2009-September 30, 2009 submitted into evidence as trial exhibit 847-1). In the quarterly statement covering the period July 1, 2009-September 30, 2009, the combined amount held in the 401k and

---

[3] There were another four assets the bankruptcy court determined were tried with implied consent which went to Premier's a2 concealment claim, with only the antique automobiles having formed the basis of the a2 denial. Doc. 15-1 at 249. The Court does not address the denial of Crawford's discharge on this basis given the disposition of Premier's a4 claim; sustaining the bankruptcy court on even one counts defeats the appeal and affirms the judgment. Harrington v. Dononhue (In re Dononhue), B.A.P. No. NH 11-026, 2011 Bankr. LEXIS 4951, at * 40 (B.A.P. 1st Cir. Dec. 20, 2011).

[4] Crawford testified that the 401k was $115,000 and the "total balance of the cash" was $148,495 as of June 30, 2009, but the June 30, 2009 statement is not part of the record herein because although referenced during the trial, it was not introduced into evidence. Doc 15-2 at A839.

CBP was approximately $180,000, with the CBP balance listed as approximately $33,000. Doc. 15-4 at A847. The 401K has increased by about $22,000 during this period. Crawford did not amend his Schedule B (initially filed on September 8, 2009) to reflect the increase in the value that may have occurred between June 30, 2009 and September 8, 2009, nor did he amend to disclose the existence of the CBP.

 B. <u>Trial of CBP</u>

The issue of the CBP was first raised on the second day of trial, when Premier sought admission of the foregoing Wells Fargo statements, over the objection of Crawford:

> Q: Okay. But you can recognize those as your quarterly 401K statements?
> A. Yes.
> Q. Those are the dates that are exhibited on the statement.
> A. Yes.
> MR. CURRAN: I'd ask that that be admitted as Exhibit 21 Number 847-1.
> MR. KERWIN: Your Honor, if you please, as to this, I think under Rule 403 that these documents are cumulative and, frankly, unnecessary. There was disclosure of the 401K and, frankly, the record is enormous at this point. **And I don't think there's been a proffer as to why they're relevant.**
> MR. CURRAN: They're not cumulative at all, Judge, and --
> THE COURT: They're not cumulative?
> MR. CURRAN: They're not cumulative at all. **They're -- and as you will soon see when I examine the witness, they're very important to this case and his disclosures**.
> THE COURT: They refer to assets of the debtor, correct?
> MR. CURRAN: Absolutely.
> THE COURT: They were -- and during a period just prior to filing?
> MR. CURRAN: Yes, during --
> THE COURT: Are they '09 through '010?
> MR. CURRAN: During the period of 7 --
> THE WITNESS: Those are documents after.
> THE COURT: Hold on.
> MR. CURRAN: July 1, 2009 through September 30, 2009. He filed on September--
> THE COURT: '08.
> MR. CURRAN: He filed on September 20th is --September 8, 2009.
> THE COURT: 2009.
> MR. CURRAN: This is the -- the top schedule is the statement period from July through September.
> THE COURT: All right. I'll overrule that objection. They're admitted.

Doc. 15-2 at A621-23 (emphasis added).

After the bankruptcy court overruled Crawford's objection to admission of the Wells Fargo statement, Premier examined Crawford:

> Q: You had -- at the time that you filed your bankruptcy petition you had a 401K plan and a CBP, did you not?
> A. Yes.
> Q. Okay. And you had approximately $146,000 in your 401K plan. You listed that on your schedules, did you not?
> A. Yes.
> Q. Okay. But you also had approximately $33,000 in your CBP which was vested and you never listed that on your schedules, did you?
> A. I gave all this information to Mr. Desmond.
> Q. Mr. Crawford, please respond to my questions.
> A. There was a CBP showing here, yes.
> Q. Please respond to my questions. Did you or did you not at the time that you filed your petition and schedules have a CBP at Wells Fargo Bank and have – with approximately $33,000 in it?
> A. That is there, yes. It was not listed, for whatever reason. Yes.
> Q. You owned that?
> A. I'm sorry?
> Q. You owned that at the time you filed your bankruptcy.
> A. Another part of the retirement plan, yes.
> Q. Okay. And you didn't list it on your schedules in the bankruptcy, did you?
> A. Correct.
> Q. And your Plan was vested in that CBP, correct?
> A. It's part -- It's all invested the same way as the 401K is.
> Q. What I -- the question was, Mr. Crawford, was you were vested in that plan --
> A. I was vested?
> Q. Do you understand my question?
> A. Yes, I do. Yes.
> Q. And that $33,782 listed on your CBP statement is the vested cash balance amount, correct?
> A. Correct.
> Q. And why didn't you list the $33,000 – roughly $33,000 asset on your bankruptcy schedules?
> A. I don't have a good answer for you, sir.

Id. at A624-26.

After this testimony, Crawford's counsel elicited testimony from Crawford about the CBP:

> Q: All right. Now, you recall there were a series of questions that Mr. Curran was addressing with you concerning your 401K plan and a CBP, do you recall that?
> A. Yes.
> Q. First, in your own words, what's the cash balance?
> A. It's a plan that and they discontinued…It's a plan that was discontinued under the old Norwood West situation, I believe, where they --
> Q. Well, what is it? Is it a matching plan? What is it?
> A. No. I think -- yeah. Actually, that is the matching part of it. You're right, it is, yep.
> Q. Well --
> A. The employer contribution is somewhere else, right?
>     . . . .
>
> Q. I'm showing you, sir, this page from 847-1. Is that to the best of your know -- first of all, have you see that document before, sir?
> A. I believe this was presented earlier today, yes.
> Q. And in our interests and a clear record, what is the statement, sir?
> A. It says 4/1/09 to June 30, '09.
> Q. And what is the 401K balance as of June 30, '09?
> A. Total combined was one -- or the 401K is 115 and the total balance of the cash is 148,495.
> Q. All right. And can you tell us, sir, if you know, does that amount comport with the amount you put in the bankruptcy schedules for the 401K with Wells Fargo?
> A. It does.

Id. at A645-49.

On re-direct Premier again asked about the CBP:

> Q: That's not my question, Mr. Crawford. I asked you about all of your retirement programs or Plans at Wells Fargo. That includes -- strike that. Let me just back up, then. At the time you filed your bankruptcy petition, you had a 401K plan, did you not?
> A. Yes.
> Q. At the time you filed your petition you had a CBP, did you not?
> A. That's part of the 401K, yes.
> Q. Well, it's separated out as a separate plan on your statement, is it not?
> A. But it all comes in that one 401K statement, correct?
> Q. Mr. Crawford, could you answer my question, please?
> A. I believe --
> Q. Is it not separated out as a separate plan on your statement, the CBP? Is it not?
> A. I think it's a different heading. I agree; yes, sir.

Id. at A705.

Then, before closing arguments, the parties submitted post-trial briefs. Premier asserted that Crawford's failure to disclose the existence of his interest in the CBP gave rise to an a4

claim. Doc. 15-1 at A198-99.  Specifically, under the heading "Wells Fargo Cash Balance Plan," Premier stated:

> At the time he filed for bankruptcy, Crawford also had an interest in the Wells Fargo "Cash Balance Plan," which contained approximately thirty-three thousand dollars ($33,000) of vested funds. Crawford's Schedule B also failed to list his interest in the Cash Balance Plan. During the Trial, Crawford admitted that he failed to disclose his interest in the Cash Balance Plan. When pressed at Trial to explain the omission, Crawford could not offer any "good answer." Although Crawford's retirement statements identify his interest in his employer's 401k plan separately from the Cash Balance Plan, Crawford did not list the Cash Balance plan assets separately from the 401k plan assets on his Schedules. Nor did Crawford even check his 401k and Cash Balance Plan statements to ensure that the current balances were correctly reported–let alone identify the Cash Balance Plan - when he eventually filed his Amended Schedule B in May 2011.

Id.

In turn, Crawford's Proposed Findings of Fact and Conclusions of Law sought to convince the bankruptcy court that he disclosed his CBP, and that any shortcomings in this respect was not done with fraudulent intent:

> 23. There is no dispute that Crawford disclosed the existence of his interest in a 401(k) plan on his original Schedule B. Nor is there any dispute that the value of the 401(k) plan reported on Schedule B included the value of Crawford's CBP and that the combined balance disclosed was consistent with the values reported on Crawford's quarterly statement for the period ending June 30, 2009. Premier presented no evidence to rebut Crawford's testimony that the CBP is part of the 401(k) plan and not a separate plan. Moreover, even assuming that Premier is correct that a debtor must report the value of his 401(k) plan as of the exact date of filing rather than based on the value reported on the last available statement, Crawford's disclosure demonstrates that any such false statement was not made with a fraudulent intent. Crawford made a good faith effort to report accurately the value of his 401(k) plan.  A224 para. 23
>
> 74. Crawford made the following disclosures, among others, on his original Schedule B filed on September 8, 2009:
>
> (a) Balance of 401(k) with Wells Fargo: $148,000. Plf. Ex. 850. The amount reported on Schedule B included the balance in Crawford's cash balance Plan, which Crawford understood was not a separate plan from his 401(k). Day 3 at p. 60, line 10. The amount reported on Schedule B was consistent was the combined balance of Crawford's 401(k) and cash

>balance Plan as reflected on the statement through June 30, 2009,
>which would have been the most current quarterly statement available to
>Crawford at the time he filed his schedules. Day 2 at p. 136, lines 12-19.

Id. at A224; A233.

Six weeks after the parties' post-trial submissions, at closing arguments, Premier stated:

>We also know that the debtor maintained a CBP and at the time of his filing there was an amount that approximated -- with Wells Fargo that approximated $33,000. That's Exhibit 847-1 where we introduced the statement from Wells Fargo showing the amount of that plan -- contained in that plan. That wasn't disclosed on his Schedule B nor was it disclosed on his amended Schedule B.
>
>. . . .
>
>We have a self-serving statement that essentially, well, the cash balance plan was part of the 401K plan. But if the Court looks at the exhibits the Court can see at Exhibit 847-1 that the debtor didn't have $144,000 -- $146,000 in his combined 401K plan and cash balance plan at the time the petition was filed. He had $180,000 combined broken out between $146,000 in his 401K and 33.7 thousand dollars in his cash balance plan. Cash balance plan simply was omitted as was the deferred compensation plan.

Doc. 15-2 at A802; A807.

Crawford's counsel had the following to say about the CBP during closing arguments:

>I'd just like to take a minute on the 401K and the CBP, Your Honor. And I'd ask my colleague Ms. Shanahan, because I still believe there is confusion in the record with respect to whether that balance was properly disclosed in these schedules if you'd permit, Your Honor.
>THE COURT: To have her speak?
>MR. KERWIN: Yes, Your Honor.
>THE COURT: Any objection?
>MR. ANTONELLI: I don't have any objection, Your Honor.
>THE COURT: All right. She may.
>MS. SHANAHAN: Thank you, Your Honor. Just a point to clarify on the issue about the 401K balance and the cash balance. Mr. Crawford disclosed on his schedules a balance of about $148,000 in his 401K Plan. He also testified that his understanding was that the CBP was part of the 401K plan. Now, Mr. Antonelli referred you to Exhibit 847-1 and to a balance that's reflected there, but this schedule, this statement-- quarterly statement is for the period July 1, 2009 to September 30, 2009. Mr. Crawford filed for bankruptcy on April 11, 2009 and filed his schedules on September 8 of 2009. So this statement would not have

> even been available to him as of the time he filed his petition or at the time he filed his schedule. Rather, the last statement -- quarterly statement available to him would have been the June 30, 2009 statement. And on page 136 of the transcript from day two there's testimony regarding this issue that the balance reflected on the June 30, 2009 schedule -- or excuse me, quarterly statement reflected a combined balance for both the 401K plan and for the CBP of $148,000. So while the CBP wasn't separately listed on his schedule, the amount in it was included in the 401K amount that was reflected on Mr. Crawford's schedule that was filed in September of 2009. Thank you, Your Honor.

Id. at A823-24.

The argument about Crawford's CBP continued on rebuttal and three more rounds of sur-rebuttal, with both sides arguing what amount the Wells Fargo statements showed. Doc. 15-3 at A832-33; A836; A837-38; A839-40. Crawford's counsel sought to clarify (again) that the amount Crawford could only have known about when he filed his original Schedule B came from the quarterly statement ending June 30, 2009, and showed the total combined amount of the 401k and CBP was correct as stated--$146,000. Id. at A836.

Throughout all the back and forth about the CBP during post-trial briefing and closing arguments, there was never any objection raised about inclusion of Crawford's CBP as a non-pleaded claim. The parties disputed only the merits--whether Crawford properly disclosed the CBP, and the disclosed amount's accuracy.

II.  DISCUSSION

  A.  Standard of Review

On appeal, the "district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceeding." Fed. R. Bankr. P. 8013. "[W]hen a party chooses to appeal a bankruptcy court's decision to the district court pursuant to 28 U.S.C. §158(a), the district court reviews the bankruptcy court's conclusions of

law de novo." Davis v. Cox, 356 F.3d 76, 82 (1st Cir. 2004). The bankruptcy court's findings of fact will not be set aside "unless clearly erroneous." Boroff v. Tully (In re Tully), 818 F.2d 106, 108 (1st Cir. 1987); see 28 U.S.C. § 2075 ("Findings of fact [by the bankruptcy court] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "Clear error is not demonstrated by pointing to conflicting evidence in the record. Rather, it exists if the bankruptcy court's findings of fact are illogical, implausible, or without support in the record." Haig v. Shart (In Re Shart), 2014 Bankr. LEXIS 4779 at, *48 (B.A.P. 9th Cir. Sept. 18, 2014) (citations omitted); accord Anderson v. Bressemer City, N.C., 470 U.S. 564, 577 (1985). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson, 420 U.S. at 574. As the Supreme Court explained:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources.

Id. at 574-75.

Accordingly, the bankruptcy court's findings of fact, "are to be set aside only if, on the entire evidence, [the Court is] 'left with the definite and firm conviction that a mistake has been committed.'" In re Tully, 818 F.2d at 109 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Finally, a court's finding of implied consent to trial of an issue is reviewed for abuse of discretion, requiring this Court to defer to the bankruptcy court "for any adequate reason apparent from the record." Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994); accord Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 319 (1st Cir. 2012).

B.  Implied Consent

Crawford appeals the bankruptcy court's finding that he impliedly consented to trial of the CBP as a basis of Premier's a4 objection to discharge. "Federal Rule of Civil Procedure 15(b) allows an unpleaded claim to be considered when the parties' conduct demonstrates their express or implied consent to litigate the claim." Antilles Cement, 670 F.3d 319. It states in relevant part:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move - at any time, even after judgment - to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2).[5]

"A party can give implied consent to the litigation of an unpleaded claim in two ways: by treating a claim introduced outside the complaint 'as having been pleaded, either through [the party's] effective engagement of the claim or through his silent acquiescence'; or by acquiescing during trial 'in the introduction of evidence which is relevant only to that issue.'" Antilles Cement, 670 F.3d at 319 (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). "One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel. . . . Under Rule 15(b), lack of consent is manifested by an objection on the ground that the evidence is not with the issues raised by the pleadings." Conjugal P'Ship of Jones v. Conjugal P'Ship of Pineda, 22 F.3d 391, 400-01 (1st Cir. 1994) (internal citation and quotation marks omitted); accord Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29 (1st Cir. 2012). An objection should

---

[5] Rule 15(b)(2) is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7015.

generally be made once it "be[comes] clear" that the issue "would be at the heart" of the proceedings. Antilles Cement, 670 F.3d at 319.

Additional signs of implied consent include whether the party "actively constest[ed]" the claim on the merits, Antilles Cement, 670 F.3d at 319, and whether "the opposing party actually produced evidence on the new issue," Conjugal P'Ship of Jones, 22 F.3d at 400-01. "The bounds of implied consent ensure an opposing party receives fair notice of the claims against it which it must defend." Nickless v. Conley (In re Byers), 312 B.R. 22, 26 (D. Mass. Bankr. 2004) (finding no implied consent where the presentation of the evidence at trial could not have put the opposing party on notice that an unanticipated claim was being presented to the court).

In the face of the parties' conduct during the trial, Crawford cannot establish an abuse of discretion in the bankruptcy court's determination that he impliedly consented to trial of the CBP disclosure issue. Crawford lodged one objection related to the CBP evidence (the Wells Fargo Statements) at the outset. Doc. 15-2 at A621-23. He contended that he had made disclosure of his retirement assets and, therefore, the quarterly account statements were duplicative and unnecessary, especially in the absence of any proffer establishing relevance. Id. Premier's response put Crawford on notice of the CBP issue when he represented to the bankruptcy court that the evidence went to Crawford's "disclosures." Id. Premier's next line of questioning made clear its two positions: that Crawford failed to disclose the CBP on his Schedule B, and that the amount Crawford listed underreported his retirement assets. Id. at A624-26. In other words, Premier made its proffer in the form of its examination of Crawford. Armed with knowledge of the purpose, relevance and theory animating Premier's offer of the CBP evidence, Crawford, rather than objecting or requesting more time to prepare, engaged in the merits of the dispute. Id.

at A649. In short, Crawford's initial and, only, objection did not raise a challenge to trial of the CBP disclosure issue.

Premier's post-trial memorandum eliminated any conceivable doubt as to the argument it had advanced. Premier argued that Crawford "also failed to list his interest in the Cash Balance Plan" on Schedule B, "admitted that he failed to disclose his interest," and conceded had no "good answer" for his failure. Doc. 15-1 at A198-99. Crawford submitted his own post-trial memorandum in the form of Proposed Findings of Fact and Conclusions of Law, wherein he asserted, in part, that "Crawford disclosed the existence of his interest in a 401(k) plan on his original Schedule B," and "Crawford made a good faith effort to report accurately the value of his 401(k) plan." Doc. 15-1 at A223. Nowhere did he object to consideration of the CBP disclosure issue. Rather, he argued only on the merits. At the closing arguments, six weeks later, the parties' reiterated their positions and Crawford, again, failed to object to consideration of the CBP disclosure issue.[6]

Confronted with these facts, the bankruptcy court determined that "extensive evidence and argument about to [sic] the omission of this plan were presented at trial without objection; and Crawford has addressed this count on its merits in his Proposed Findings and Conclusions and does not now argue that this unpled count was tried without consent. I find that it was tried by implied consent and will treat it as properly raised." Doc.15-1 at A290. This Court agrees.

---

[6] Notably, during closing arguments, Crawford did object to the bankruptcy court's consideration of the creditor's 341 meeting transcript as a basis of a false oath claim on the grounds that Premier did not plead the claim and he did not consent to trial of the matter. Doc. 15-2 at A818-19; A836-37; A839-40. However, he made no such objection regarding the CBP. Crawford explained that the Complaint only said that Premier's false oath claim was on account of his Schedules and Statement of Financial Affairs, which necessarily did not include statements at the creditors meeting. Doc. 15-2 at A836. Applying this argument to the CBP, perhaps explains the reason Crawford did not object to trial of the CBP as a matter not pleaded, as it went to Crawford's Schedules.

The Bankruptcy Court did not abuse its discretion in considering the CBP issue. In sum, Crawford's conduct demonstrated he impliedly consent to trial of the CBP: (1) he was on notice of the issue; (2) he never objected once he was on notice; (3) he introduced evidence on the issue himself; and (4) he disputed the merits of the claim repeatedly. Given these circumstances, there is more than "adequate reason to defer to the bankruptcy court." Gold, 30 F.3d at 253. The finding that the CBP was tried by implied consent is AFFIRMED.

C. False Statement

Title 11 U.S.C. § 727(a)(4)(A) provides that a debtor may not receive a discharge if he or she has knowingly and fraudulently made a "false oath or Plan." The party objecting to the discharge must show, by a preponderance of the evidence, that: (1) the debtor made an oath; (2) that was false; and (3) related to a material fact in the case. Lussier v. Sullivan (In re Sullivan), 455 B.R. 829, 837 (B.A.P. 1st Cir. 2011). "The First Circuit specifically explained the shifting burdens of proof in proceedings involving false oaths by stating that the burden of proof rests with the [plaintiff] . . . but once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." Mclure v. Cormier (In re Cormier), BAP. No. MW 10-002, 2010 Bankr. LEXIS 2322, at *11 (B.A.P. 1st Cir. Aug. 5, 2010) (citing In Re Tully, 818 F.2d 106 (1st Cir. 1987)).

Here, although the amount held in the CBP was disclosed, the existence of the CBP was not, and therefore, Crawford's oath was false. Schedule B, item 12, plainly asked for disclosure by requesting information about a variety of type of retirement assets and specifically directing that Crawford must "Give Particulars." Doc. 15-6 at A879. The burden then shifted to Crawford to demonstrate that he did not commit a false oath. In re Cormier, 2010 Bankr. LEXIS 2322, at * 11.  His attempt to convince the bankruptcy court that it was an innocent mistake, that his former

attorney was responsible, or that he was rushed and did not notice the error failed. Doc. 15-1 at A274. The bankruptcy court found this testimony "vague, thin on detail, not wholly consistent with itself, and uncorroborated." Id.  Simply put, "the bankruptcy judge—the fact-finder of first resort," considered Crawford's explanations and "found them wanting." In Re Tully, 818 F.2d at 111. From the record, the bankruptcy court could fairly conclude that Crawford did not carry his burden to show that he did not commit the offense charged.

Next, Crawford asserts that his failure to include the words "Cash Balance Plan" was not material. Doc 14 at 26. A false statement is material if it "bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." In re Tully, 818 F.2d at 110 (internal quotations and citations omitted). The "threshold for materiality under § 727(a)(4)(A) is fairly low." Hunnicutt v. Green (In Re Green), BAP No. MB 13-061, 2014 Bankr. LEXIS 3795, at *16 (B.A.P. 1st Cir. Aug. 6, 2014). "Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the detail of the debtor's finances. . . [so that] knowing and fraudulent omission of a bank account . . . warrants the denial of the discharge." Robin Singh Educ. Servs. v. McCarthy (In re McCarthy), 488 B.R. 814 (B.A.P. 1st Cir. 2013) (internal citation and quotation marks omitted).  Debtors have an absolute duty to report all assets "even if they believe their assets are worthless or are unavailable to the bankruptcy estate." Wood v. Premier Capital, Inc. (In re Wood), 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003). The failure to disclose the CBP was not based upon failure to disclose just three words, but instead went to Crawford's failure to fully disclose the existence of his cash account.

Based on the record, this Court is not "left with the definite and firm conviction that a mistake has been committed." In re Tully, 818 F.2d at 109 (internal citation and quotation marks omitted). Accordingly, the bankruptcy court's judgment that Crawford be denied a discharge on the grounds that he committed a false oath with respect to his CBP is AFFIRMED.

## CONCLUSION

For the reasons stated herein, the bankruptcy court's judgment is AFFIRMED.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge